## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

MICHELLE B.,

                                 Plaintiff,

         v.                                           1:19-CV-710
                                                            (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                 Defendant.

---

HOWARD D. OLINSKY, ESQ., for Plaintiff
CHRISTOPHER L. POTTER, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

### MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 7).

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") on October 6, 2015, alleging disability beginning May 8, 2014. (Administrative Transcript ("T") 105, 211-212). Plaintiff's application was denied initially on December 29, 2015. (T. 105, 108-11). Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Arthur Patane, on November 6, 2017. (T. 70-96). At the request of plaintiff's counsel, a second hearing was held on May 10, 2018, at which time counsel cross-examined vocational expert ("VE")

Salvatore Garozzo regarding his responses to interrogatories.  (T. 59-69).  On August 2, 2018, the ALJ issued an order denying plaintiff's claims.  (T. 30-41).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on April 19, 2019.  (T. 1-3).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment

which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include

3

that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859

F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its

interpretation of the administrative record for that of the Commissioner, if the record

contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v.

Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence

in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles

v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ

explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ

cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz

v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No.

09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   **FACTS**

Plaintiff was 50 years old on the date of the initial administrative hearing.  (T.

73).  She lived with her parents and 16-year-old daughter.  (T. 79).  After completing

high school, plaintiff eventually entered the work force and was most recently

employed by Key Bank as a lock box specialist.  (T.  74.).  Her duties included data

entry and opening mail.  (*Id.*).  Plaintiff was let go from her position at Key Bank

because of her performance, which, she testified, suffered as a result of her medical

conditions and treatment relative to several ongoing workers' compensation claims.

(*Id.*).  Specifically, plaintiff testified that she experienced issues with her right arm,

including her shoulder, elbow, and wrist; she also treated for carpal tunnel in both

hands.  (T.  75-76).  She had consistent numbness in her right arm, and consequently

4

made "a lot of mistakes" at work.  (T. 74-76).  Plaintiff's carpal tunnel syndrome was diagnosed fifteen years prior to the date of the initial hearing.  She had carpal tunnel release performed on both hands in 2000.  (T. 77-78).  In 2015, she had arthroscopic surgery on her right shoulder, and was "a lot better" after the surgery.  (T. 78-79).  The same year, she had two other surgeries to her right upper extremity – the first to alleviate her "trigger finger," and the second on the ulnar nerve in her elbow.  (T. 80-83).

Plaintiff testified that during an average day she typically drove her daughter to school, performed household chores, planned and cooked dinner, took a shower, walked the dog, and ran other errands.  (T. 79-80).  She could not lift anything "heavy" with her right arm.  (T. 80).  At the time of her initial hearing she was waiting for workers' compensation to approve another procedure to address the continued  loss of feeling in her hands.  (T. 80-81).  Plaintiff testified that there was no pain associated with the numbness she experienced, just weakness.  (T. 87).  However, she had difficulty opening ziploc bags and jars, and testified that she dropped items such as her keys.  (T. 84-85).  Her hands went numb when she held a book.  (T. 87).

Plaintiff further testified that she suffered from anxiety and depression caused by, among other things, her medical conditions.  (T. 91-92).  She attended therapy with a psychiatric nurse practitioner.  (*Id.*).  She was also pursuing bariatric surgery, and weighed approximately 315 pounds on the date of the hearing.  (T. 85-86).  She did not have any limitations in her ability to sit or walk.  (T. 86).  She experienced frequent, recurring urinary tract infections that affected her ability to function.  (T. 88-91).  In addition, plaintiff had diabetes, which was "somewhat manageable" at the time of the

5

hearing.  (T. 94).

## IV.   THE ALJ'S DECISION

After reviewing the procedural history of the plaintiff's application and stating the applicable law, the ALJ found that plaintiff had not engaged in substantial gainful activity ("SGA") since her disability onset date.  (T. 32).  At step two of the sequential evaluation, the ALJ found that plaintiff had the following severe impairments: right upper extremity disorder, diabetes mellitus, obesity, and carpal tunnel syndrome.  (*Id.*).  At step three of the evaluation, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment.  (T. 35).

At step four, the ALJ found that plaintiff had the RFC for light work as defined in 20 C.F.R. §§ 404.1567(b), except that she was limited to lifting up to 10 pounds with her dominant right upper extremity.  (T. 36).  The ALJ concluded that no such restriction existed with regard to plaintiff's left upper extremity, and she could frequently, but not constantly, make use of both hands for fine manipulation.  (*Id.*).

Next, the ALJ found that plaintiff was unable to perform any past relevant work. (T. 39).  However, at step five, using the Medical Vocational Guidelines as a "framework," and the VE's testimony, the ALJ found that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (T. 40).  Thus, the ALJ found that plaintiff was not disabled.  (T. 40-41).

## V.   ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of her contention that the

ALJ's RFC determination was not supported by substantial evidence:

1.  The ALJ relied on the vague and stale opinion of a consulting examiner to craft an RFC that did not properly account for plaintiff's impairments. (Plaintiff's Brief ("Pl.'s Br.") at 13-18) (Dkt. No. 9).

2.  The ALJ failed to properly weigh the opinion of plaintiff's treating nurse practitioner regarding her mental impairments.  (Pl.'s Br. at 18-21).

3.  The ALJ failed to find plaintiff's chronic urinary tract infections severe and failed to take into account the impact her infections will have on her ability to engage in sustained work activity.  (Pl.'s Br. at 21-24).

The Commissioner contends that the ALJ's analysis of the medical opinion evidence, and his ultimate RFC determination, are supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 3-13) (Dkt. No. 12).  For the following reasons, this court agrees with the defendant and will affirm the Commissioner's decision.

## DISCUSSION

## VI.   <u>SEVERE IMPAIRMENT</u>

### A.   **Legal Standards**

The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis.  *Rhondalee T. v. Berryhill*, No. 3:17–CV–1241 (CFH), 2019 WL 1100267, at *5 (N.D.N.Y. Mar. 8, 2019) (citing *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012)).  A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).

The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b), 416.921(b).  "Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis.  The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe.  *Monique Danielle W. v. Comm'r of Soc. Sec.,* No. 5:18-CV-184 (DNH), 2019 WL 2358529, at *4 (N.D.N.Y. June 4, 2019) (quoting *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012)).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Mark K. v. Comm'r of Soc. Sec. Admin.,* No. 5:18-CV-627 (GLS), 2019 WL 4757381, at *1 (N.D.N.Y. Sept. 30, 2019) (quoting *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999)). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment . . . ." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985).  However, a combination of "slight abnormalities," having no more a minimal effect on plaintiff's ability to work, will not be considered severe.  *Id.*  The ALJ must assess the impact of

8

the combination of impairments, rather than assessing the contribution of each impairment to the restriction of activity separately, as if each impairment existed alone. *Id.*

The step two analysis "may do no more than screen out *de minimis* claims." *Vogt on behalf of Vogt v. Comm'r of Soc. Sec.,* No. 18-CV-231, 2019 WL 4415277, at *4 (W.D.N.Y. Sept. 16, 2019) (quoting *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir. 1995)).  If the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five.  *Dixon,* 54 F.3d at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone.  *Tryon v. Astrue*, No. 5:10-CV-537 (MAD), 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244 (GLS/ATB), 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)).  This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity.  20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

## B.    Application

Plaintiff argues the ALJ erred in finding that her chronic urinary tract infections ("UTI") did not constitute a severe impairment, despite "substantial evidence that this

9

impairment caused more than a minimal impact on [plaintiff's] ability to engage in successful work activity." (Pl.'s Br. at 21). The Commissioner argues that the ALJ's step two determination was supported by substantial evidence, and plaintiff's reported UTIs did not cause any significant limitation of plaintiff's physical ability. (Def.'s Br. at 11).

The ALJ found that plaintiff's right upper extremity disorder, diabetes mellitus, obesity, and carpal tunnel syndrome were severe impairments. (T. 32). In conjunction with his step two analysis, the ALJ also discussed, at length, plaintiff's reported UTIs. (T. 33). Specifically, the ALJ acknowledged plaintiff's medical records indicating that plaintiff experienced urologic symptoms "her entire life," and was generally prescribed medications which resolved her infections. (*Id.*). The ALJ also noted the negative results of various diagnostic tests, including a cystoscopy and CT scan. (*Id.*). After outlining plaintiff's history of complaints and treatment, the ALJ concluded that based on the evidence of record, plaintiff's urologic impairment was generally controlled with stable treatment, and there was no evidence to support finding that this conditions caused any significant limitation of plaintiff's ability to perform basic work activities. (*Id.*).

The ALJ's decision reflects a detailed analysis of plaintiff's reported urologic symptoms and the objective evidence of record. Notably, plaintiff did not identify UTIs as a basis for disability in her initial application. (T. 97). Furthermore, plaintiff did not report any urologic issues to Dr. Prezio at her December 23, 2015 consultative examination, even though she was treated for complaints of UTI symptoms on several

occasions in 2015.  (T. 419-22).  Throughout 2016, plaintiff only saw her urologist on one occasion complaining of UTI symptoms and incomplete emptying of her bladder. (T. 477).  Her urinalysis was negative. (*Id.*).  Plaintiff visited her urologist several times between February 2017 and June 2017, complaining of frequency, urgency, and, at times, right flank pain.  The majority of plaintiff's test results from these visits were negative, or inconclusive, for an infection. (T. 461, 465, 469, 473, 666).  Plaintiff did not return to the urologist until April 2018, at which time she was found to suffer from "stress incontinence," and was referred for a cystoscopy for further assessment.   (T. 659).

It is well settled that any conflict in the evidence is for the ALJ to resolve, and where the evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Lucena R. v. Saul*, No. 5:18-CV-733 (CFH), 2019 WL 4466988, at *5 (N.D.N.Y. Sept. 18, 2019) (citations omitted).  No treating physician provided an opinion regarding plaintiff's physical limitations resulting from UTIs, and the medical evidence suggested that her UTI complaints most often resolved when treated, with no urinary symptoms between infections.  Thus, there is substantial evidence in the record which supports the ALJ's determination that plaintiff's urologic condition was not a severe impairment during the period of alleged disability.

In the alternative, any error by the ALJ in failing to find plaintiff's UTIs severe was harmless.  It is well settled that the failure to find a specific impairment to be severe at step two is harmless where the ALJ concludes there is at least one other severe

impairment, continues with the sequential evaluation, and demonstrates through his analysis that he adequately considered the evidence related to the non-severe impairment. *Rhondalee T. v. Berryhill*, 2019 WL 1100267, at *5 (citing inter alia *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013)).  Here, the ALJ found that plaintiff had several severe impairments at step two of his evaluation.  He then continued with the remaining steps of the sequential analysis, and specifically considered plaintiff's reported UTI symptoms in doing so.  (T. 36).  Thus, any error resulting from the ALJ's failure to classify plaintiff's UTIs as severe was harmless, and remand is not warranted on this basis.

## VII.  RFC/WEIGHT OF THE EVIDENCE/TREATING PHYSICIAN

### A.  Legal Standards

#### 1.  RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In determining a claimant's RFC, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler,* 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Weight of the Evidence/Treating Physician

Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2 (1996). These issues include whether the plaintiff's impairments meet or equal a listed

13

impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.* However, in making a determination regarding disability, the ALJ must weigh all of the evidence of record and carefully consider medical source opinions, even with respect to issues reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3.

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v.*

14

*Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)).  "[T]he ALJ must 'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.' " *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d at 32).  Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error.  *Id.*  It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

**B.    Application**

Plaintiff's remaining arguments challenge the ALJ's evaluation of the opinion evidence of record, and whether such evidence adequately supported the ALJ's RFC determination for modified light work.  (Pl.'s Br. at 13-21).

### 1.    Consultative Examiner Joseph Prezio, M.D.

On December 23, 2015, Dr. Prezio performed a one-time orthopedic examination of plaintiff.  In his report, Dr. Prezio noted plaintiff's history of numbness and tingling in both hands; her previous carpal tunnel release; and her shoulder surgery, elbow surgery, and trigger finger release, each performed earlier in 2015.  (T. 419).  He also acknowledged plaintiff's hypertension and asthma, which were under control, as well as her diabetes, which was "a little bit off."  (T. 419).  Plaintiff reported to him her ability to "do most things around the house."  (T. 420).

Dr. Prezio's physical examination of plaintiff revealed generally unremarkable findings.  Plaintiff exhibited a normal gait and station, with full range of motion throughout her spine and lower extremities.  (T. 420-21).  Plaintiff also exhibited full

range of motion in her upper extremities, including her shoulders, elbows, forearms, wrists and fingers.  (T. 420).  She measured full strength in her proximal and distal muscles.  (T. 421).  Plaintiff's hand and finger dexterity were intact, with a grip strength "just slightly under" 5/5.  Dr. Prezio noted minimal tenderness over both carpal ligaments, with a sensation of tingling radiating in that region down into the fingers, "particularly the ulnar distribution to both hands."  (T. 420).  Plaintiff retained "the full ability to zip, button, and tie."  (*Id.*).

Based on his findings upon physical examination, Dr. Prezio opined that plaintiff had mild limitations with respect to engaging in any fine and gross manipulation of both hands.  (T. 421).  He further opined that plaintiff needed to avoid respiratory irritants.  (*Id.*).

In evaluating the opinion evidence of record, the ALJ gave Dr. Prezio's opinion "great weight, but recognize[d] that the [plaintiff's] asthma is well controlled with treatment as needed, and . . .  she recently underwent carpal tunnel surgery on the left." (T. 38).  Notably, Dr. Prezio's statement is the only opinion of record regarding plaintiff's physical functional limitations.

Plaintiff's basis for arguing that the ALJ improperly relied on Dr. Prezio's opinion in crafting an RFC determination is twofold.  First, plaintiff contends that the consultative examiner's opinion is vague, and his opined "mild limitations" for fine and gross manipulation were an insufficient basis to conclude that plaintiff could perform substantial gainful employment.  (Pl's Br. at 15).  In support of her argument, plaintiff distinguishes her case from those such as *Johnson v. Colvin*, 669 F. App'x 44 (2d Cir.

2016).[1]  Instead, plaintiff maintains that her case is comparable to those in which the

Second Circuit has rejected an ALJ's reliance on similarly vague opinions, citing *Selian*

*v. Astrue,* 708 F. 3d 409 (2d Cir. 2013) as example.  In *Selian*, the Second Circuit

reversed a denial of benefits where the consultative examiner opined that plaintiff

"should be able to lift . . . objects of a mild degree of weight on an intermittent basis."

*Id*. at 421.   The Court properly found that the meaning behind this remarkably vague

opinion was "left to the ALJ's sheer speculation." *Id.*

Despite plaintiff's contention, this case is distinct from *Selian* because Dr. Prezio

did not proffer an opinion so "remarkably vague" as to leave the ALJ to speculate to its

actual meaning.  Here, Dr. Prezio's qualification of "mild" specifically addressed the

degree of limitation plaintiff suffered with respect to her fine and gross manipulation.

Courts within this district have consistently held that similar opinions citing a  "mild"

degree of limitation support an RFC findings that a claimant is capable of light work.

*See, e.g., Gerry v. Berryhill*, No. 17-CV-7371, 2019 WL 955157, at *3 (E.D.N.Y. Feb.

26, 2019) (consultative examiner's opinion for "mild" to "moderate" limitations

constituted substantial evidence in support of the ALJ's RFC determination that

plaintiff could perform "light" work);  *DeFreece v. Colvin*, No. 12 Civ. 4641, 2013 WL

4028154, at *6 (S.D.N.Y. Aug. 8, 2013) (consultative examiners' findings of "mild"

limitations in plaintiff's functional abilities, including "mild limitations to fine motor

movements," were a "plainly sufficient" basis for the ALJ's conclusion that plaintiff

---

[1]Plaintiff represents that, in *Johnson,* the Second Circuit held an ALJ may rely upon a vague opinion like the one at issue in her case, however "that reliance must include references to **other evidence** in the record supporting the ALJ's RFC determination."  (Pl.'s Br. at 15).

could perform light work); *Colon-Sanchez v. Commissioner*, No. 5:14-CV-0705 (TJM/DEP), 2016 WL 638816 at *7 (N.D.N.Y. Jan. 25, 2016) ( RFC determination that plaintiff could perform a full range of light work was "well supported" where it drew support from the consultative examination which found only mild-to-moderate limitations in plaintiff's ability to lift, carry, push and pull) (report recommendation), *adopted,* 2016 WL 632548 (N.D.N.Y. Feb. 17, 2016).

Moreover, Dr. Prezio did not merely opine that plaintiff had "mild limitations." Rather, Dr. Prezio's opinion reflects a thorough physical examination of plaintiff, and contains a specific report of that examination. *See Ashby v. Astrue*, No. 11-CV-02010, 2012 WL 2477595, at *12 (S.D.N.Y. Mar. 27, 2012) (ALJ did not err by relying on opinion evidence contained in consultative examiner's report utilizing the terms "moderate" and "mild," where the report also "evidence[d] a thorough physical examination of plaintiff and include[d] a highly specific report of the examination") (report and recommendation), *adopted*, 2012 WL 2367034 (S.D.N.Y. June 20, 2012). After discussing plaintiff's medical and social history, identifying her current medications, and describing her activities of daily living, Dr. Prezio directly examined plaintiff's ability to function in the various domains in which she alleged to be limited. Specifically, Dr. Prezio documented plaintiff's degree of fine motor dexterity, grip strength, upper extremity strength, and noted her minimal tenderness and reported tingling sensation. (T. 420-21). He also reported her sustained "full ability" to zip, button and tie. *Cf. Leonard v. Saul*, No. 5:18-CV-993 (DNH/CFH), 2020 WL 896904, at *6 (N.D.N.Y. Feb. 25, 2020) (rejecting ALJ's reliance on "mild" to "moderate"

limitations opined by consultative examiner due to lack of other qualifying factors in the examiner's report) (report and recommendation), *adopted,* 2020 WL 1169400 (N.D.N.Y. Mar. 11, 2020).  In light of his specific findings, the use of the terms "mild" by Dr. Prezio to describe plaintiff's fine and gross motor limitations is not vague, and supports the ALJ's RFC determination for modified light work.

Next, plaintiff argues that Dr. Prezio's opinion does not constitute substantial evidence for the ALJ's RFC determination crafted over two years after the opinion was rendered.  (Pl.'s Br. at 16).  "A medical opinion may become stale if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision." *Maxwell H. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0148 (LEK/CFH), 2020 WL 1187610, at *5 (N.D.N.Y. Mar. 12, 2020) (quoting *Clute ex rel. McGuire v. Comm'r of Soc. Sec.*, No. 18-CV-30, 2018 WL 6715361, at *5 (W.D.N.Y. Dec. 21, 2018)).  By itself, "[a] gap of time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion, but a meaningful chan[ge] in the plaintiff's condition during that gap will do so."  *Id.* (internal quotations and citations omitted).

Here, there is no evidence of an intervening event, such as a new injury, or significant deterioration of the existing conditions, to render the consultative examiner's opinion stale.  Dr. Prezio's physical examination of plaintiff took place after her shoulder, elbow, and trigger finger surgeries in 2015.  Dr. Prezio specifically took these procedures into consideration in rendering his opinion of plaintiff's functional limitations, along with plaintiff's diagnosis of bilateral carpal tunnel syndrome.  Dr.

Prezio's opinion regarding plaintiff's functional limitations draws support from plaintiff post-operative medical records throughout 2015, indicating substantial healing and improvement of her condition.[2]

Moreover, plaintiff has failed to demonstrate that her condition deteriorated to the extent that it would no longer comport with the limitations Dr. Prezio suggested, and which the ALJ ultimately considered in the RFC finding.  There is no evidence that plaintiff treated for impairments to her upper extremities at any time throughout 2016; in fact, she denied extremity weakness, numbness, or joint pain to her primary care physician in March 2016.  (T. 526).  Plaintiff had ulnar nerve surgery on her right elbow on February 24, 2017, however during her pre-operative visit, she denied weakness or numbness in her extremities, and her physical examination revealed normal findings. (T. 512- 13).  As of April 2017, she reported that her right upper extremity was "doing well" with no numbness or tingling; however she reported recurrent numbness and tingling in her left upper extremity.  (T. 651).  Notably, plaintiff denied these same symptoms at other times throughout 2017, and her physical examinations revealed generally normal neurologic and extremity examinations.  (T. 471, 633, 638, 692).  A nerve conduction study of plaintiff's left arm was performed on

---

[2]*See* T. 362 (2/10/15 - Plaintiff is seen in the office for status post-right shoulder surgery . . . she is noted to be doing very well on her own with range of motion exercises.); T. 364 (2/23/15 - Plaintiff presented for follow up post-right shoulder surgery . . she is reported to have done "very well" with her shoulder surgery and is "pleased with the results."); T. 371 (4/17/15 - Plaintiff presented for status post-right trigger finger release.  At seven days post-op she reported to be doing well and "has not had any triggering of the right long finger."); T. 374 (5/14/15 - Plaintiff "has done very will with her shoulder [surgery]. . . [she] is very happy . . . [and] much more comfortable."); T. 368 (10/6/15 - Plaintiff is "one week post-[right elbow surgery].  She is doing extremely well with range of motion and pain control.").

September 25, 2017, revealing moderate left carpal tunnel syndrome.  (T. 609, 646).

After the study, plaintiff complained of "rather severe numbness and tingling" in her

left hand, however physical examination by treating orthopedist Dr. Goldstock revealed

primarily unremarkable objective findings.  (T. 644).  Dr. Goldstock ultimately referred

plaintiff for a revision left carpal tunnel release on December 11, 2017.  (T. 646).

There is no medical evidence of record documenting that the procedure took place, or

discussing its results.[3]

Dr. Prezio's opinion is not stale merely because it pre-dates other evidence in the

record, where, as here, "the subsequent evidence does not undermine [Dr. Prezio's]

conclusions." *Healy v. Comm'r of Soc. Sec.*, No. 1:18-CV-00624, 2020 WL 1428931,

at *4 (W.D.N.Y. Mar. 24, 2020) (quoting *Hernandez v. Colvin*, No. 15-CV-6764, 2017

WL 2224197, at *9 (W.D.N.Y. May 22, 2017)).  Dr. Prezio's medical source statement

shows that he considered plaintiff's complaints of ongoing numbness and tingling in

both extremities, and his opinion as to plaintiff's mild limitations followed his

diagnosis of *bilateral* carpal tunnel syndrome.  (T. 419, 421).  Moreover, although Dr.

Prezio's opinion was based on only part of the overall administrative record, a

substantial number of treatment notes prepared after his opinion (discussed above)

reflect substantially similar objective findings.

With respect to plaintiff's condition after her carpal tunnel release in 2018, it is

---

[3]At her second administrative hearing on May 10, 2018, plaintiff's counsel reported that plaintiff was recovering from additional surgery on her left carpal tunnel.  (T. 61).  The record also includes a March 8, 2018 note from plaintiff's primary care physician, at which time plaintiff had a pre-operative evaluation for her pending left carpal tunnel release.  (T. 710).  At that time, plaintiff reported "no weakness, no numbness. . . [and] no tingling."  (T. 712).

not the court's function to make fact findings or determine de novo whether the plaintiff is or was disabled from evidence that was not before the agency. *See Petrie v. Astrue*, 412 F. App'x 401, 403 (2d Cir. 2011) (citing inter alia *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). Therefore, to the extent that plaintiff has argued that her functional limitations have increased since the date of the ALJ's August 2, 2018 decision, she may want to consider filing a new application for benefits to address these issues, if she has not done so already. *Quinlivan v. Comm'r of Soc. Sec.*, No. 08-CV-1175 (MAD/VEB), 2011 WL 2413491, at *8 (N.D.N.Y. May 23, 2011) (if the plaintiff suffered an aggravation of an impairment after the ALJ's decision, the proper remedy would be to submit a new application). Nevertheless, this court finds that Dr. Prezio's opinion was not stale and provided substantial evidence for the ALJ's conclusion that plaintiff was capable of modified light work during the alleged period of disability.

### 2.   Anja Salamack, NPP[4]

On May 25, 2017, plaintiff initiated mental health counseling with Anja Salamack, NPP ("NP Salamack") for complaints of increased anxiety and trouble sleeping. (T. 485). Plaintiff proceeded to meet with NP Salamack one-to-two times per month between May 2017 and April 2018, with some month-long gaps in treatment. (T. 488, 490, 492, 494, 496, 681, 683, 685, 687, 689).

On December 18, 2017, NP Salamack prepared a Mental Residual Functional

---

[4]NPP is an abbreviation for Psychiatric Nurse Practitioner. *See Saxon v. Astrue,* 781 F. Supp. 2d 92, 101 n. 9 (N.D.N.Y. Mar. 4, 2011).

Capacity Form on behalf of the plaintiff.  (T. 642).  NP Salamack opined that plaintiff was precluded from performing the form's 12 listed mental activities for 20% or more of an eight-hour work day, which correlated with plaintiff being off task for 80 minutes per day.  (*Id.*).  Plaintiff argues that the ALJ improperly discounted the opinion of NP Salamack, who enjoyed a longitudinal treating relationship with plaintiff and provided the only medical opinion regarding plaintiff's mental functional abilities.

Under 20 C.F.R. §§ 404.1527 and 416.927, an ALJ is required to weigh and evaluate "every medical opinion." Controlling weight may be given to a "treating source's medical opinion on the issue(s) of the nature and severity" of a claimant's impairments if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  A "treating source" is a claimant's "own acceptable medical source who provides . . . medical treatment or evaluation and who has, or has had, an ongoing treatment relationship" with a claimant.  *Id.* at §§ 404.1527(a)(2), 416.927(a)(2). Under the Social Security Ruling ("SSR") 06-03p, the regulation applicable to plaintiff's claim, "nurse practitioners are not considered 'acceptable medical sources,' and their opinions are therefore not 'entitled to any particular weight.' " *Irene v. Berryhill*, No. 6:18-CV-00038 (BKS), 2019 WL 1349560, at *21 (N.D.N.Y. Mar. 26, 2019) (quoting *Wynn v. Comm'r of Soc. Sec.*, 342 F. Supp. 3d 340, 345 (W.D.N.Y. 2018)). "Nevertheless, an ALJ should consider evidence from 'other sources,' such as nurse practitioners, on important issues like the severity of an impairment and any related functional effects." *Id.* (citing *Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 432

(W.D.N.Y. 2018)).

Here, the ALJ considered NP Salamack's opinion at length, ultimately affording it "very little weight." (T. 34-35). He acknowledged that NP Salamack was a psychiatric nurse practitioner, and outlined plaintiff's history of mental health treatment with her. (T. 34). However, in support of the limited weight afforded to her opinion, the ALJ noted that NP Salamack merely checked boxes on a form, and did not provide any reasons or clinical findings to support her severe limitations. (T. 35). The ALJ also pointed out that NP Salamack's treatment notes lacked any objective findings to support her assessment. (*Id.*). Last, he found NP Salamack's GAF assessments to be inconsistent with the evidence of record. (*Id.*).

The court finds no error in the ALJ's assessment of NP Salamack's opinion. The ALJ did not identify plaintiff's mental impairments as severe in step two of the disability analysis, and plaintiff does not argue that the ALJ erred in this respect. She does, however, argue that, based on NP Salamack's medical opinion, the ALJ should have incorporated mental limitations into the plaintiff's RFC. Notwithstanding the plaintiff's position, the ALJ sufficiently explained his reasons for providing NP Salamack's opinion very little weight. At the outset, the ALJ accurately noted that NP Salamack's opinion took the form of a checklist with no narrative support and was, by its nature, of "limited evidentiary value." *Faith Grace P. v. Saul*, No. 5:18-CV-781 (DJS), 2019 WL 4305484, at *4 (N.D.N.Y. Sept. 11, 2019) (quoting *Scitney v. Colvin*, 41 F. Supp. 3d 289, 301 (W.D.N.Y. 2014)).

However, the format of NP Salamack's opinion was not the only basis considered

in affording it limited weight, but one of many identified by the ALJ.  For example, the ALJ also discussed the lack of objective findings in NP Salamack's own treatment notes that would support such restrictive limitations.  It is appropriate for an ALJ to afford limited weight to an opinion where it is " inconsistent with [the source's] examination findings." *Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 434 (W.D.N.Y. 2018) (quoting *Glena v. Colvin,* No. 1:15-CV-510, 2018 WL 739096 at *4 (W.D.N.Y. Feb. 6, 2018)).  In this case, other than reporting that plaintiff exhibited a "depressed" mood, NP Salamack documented generally normal mental status findings upon examination.  At plaintiff's initial evaluation, NP Salamack noted her mental status as cooperative and attentive, with a normal mood[5] and appropriate affect.  (T. 485).  Her though processes were clear and organized, and she exhibited normal attention, intact insight and judgment, and good impulse control.  (*Id.*).

Plaintiff's subsequent psychiatric examinations revealed that she was consistently oriented to person, place, and time; with fluent speech and clear words.  Her thought processes were coherent, and insight was good.  NP Salamack indicated that there were signs of obsessive and compulsive thoughts; however plaintiff did not suffer from illusions or hallucinations.  Her recent and remote memory was intact, along with her cognitive functions.  Plaintiff could consistently perform simple calculations and understand proverbs.  Despite her depressed mood, her affect was appropriate and there were no loose associations.  (T. 489, 491, 493, 495, 497, 682,

---

[5]The initial evaluation report is internally inconsistent, as it subsequently states that plaintiff presented with a depressed mood.  (T. 486).

684, 686, 688, 690).

It was not improper for the ALJ to conclude that objective medical findings by NP Salamack offered no support for her assessment that plaintiff was severely limited. This is especially true considering the normal psychiatric examination results documented by plaintiff's other healthcare providers during the alleged period of disability.[6]  *See Torbicki v. Berryhill*, No. 17-CV-386, 2018 WL 3751290, at *4 (W.D.N.Y. Aug. 8, 2018) (ALJ properly afforded opinion of social worker "little weight" because she was not an acceptable medical source, she completed a check-box form in rendering her opinions, and her opinion conflicted with other medical evidence in the record).

Furthermore, the ALJ considered plaintiff's activities of daily living and self-reported functional abilities, which were overwhelmingly inconsistent with the mental limitations opined by NP Salamack.  For example, plaintiff acknowledged that she could follow spoken and written instructions; had no problem getting along with the public, co-workers or supervisors; and had no limitations with her attention or memory. (T. 248-49).  Plaintiff also stated that, with a few exceptions, she could perform household chores, drive her car, walk the dog, shop for groceries, and prepare daily meals.  (T. 248-257).  Plaintiff's admitted ability to perform these activities is directly contradicted by NP Salamack's opinion that plaintiff was severely limited in her ability to understand, remember, and carry out very short and simple instructions; maintain sufficient attention and concentration to appropriately complete tasks in a timely

---

[6]*See* T. 341, 348, 355, 459, 467, 471, 479, 513, 527, 664, 713.

26

manner; work in coordination with or proximity to others without being unduly distracted; accept instructions and respond appropriately to criticism from supervisors; and interact appropriately with the general public. (T. 642). The ALJ properly considered plaintiff's statements regarding her activities as another reason for the limited weight afforded NP Salamack's opinion. *See Harrington v. Colvin*, No. 14-CV-6044P, 2015 WL 790756, at *16 (W.D.N.Y. Feb. 25, 2015) (ALJ properly discounted medical opinion where it assessed limitations that were, among other things, inconsistent with admissions claimant had made concerning his activities of daily living); *Evans v. Comm'r of Soc. Sec.*, 110 F. Supp. 3d 518, 536 (S.D.N.Y. June 24, 2015) (substantial evidence supported ALJ's decision to accord limited weight to severe limitations contained in medical opinion that were "not supported and inconsistent with" the plaintiff's "wide array of activities of daily living").

Finally, the ALJ did not err in affording limited weight to the plaintiff's GAF scores as reported by NP Salamack. (T. 35). "The Social Security Administration has explained that '[u]nless [a] clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.'" *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (quoting U.S. Soc. Sec. Admin., Office of Disability Programs, AM-13066, Global Assessment of Functioning (GAF) Evidence in Disability Adjudication (Oct. 14, 2014)). Not only do NP Salamack's ratings lack any explanation, there is no other evidence of record supporting the severity of the scores documented in her treatment notes.

In this case, the ALJ thoroughly discussed and considered NP Salamack's opinion, and his reasons for affording it limited weight were proper and supported by the record. Thus, the court finds no error in the ALJ's decision to omit additional mental limitations from plaintiff's RFC.  *See Piotrowski v. Comm'r of Soc. Sec.*, No. 18-CV-6075, 2019 WL 2266797, at *5 n. 4 (W.D.N.Y. May 28, 2019) ("An ALJ may give less than controlling weight to a non-acceptable medical source where, as here, he adequately addresses and discusses the opinion.") (citing *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011)).

**WHEREFORE,** based on the findings above, it is hereby

**ORDERED**, that the decision of the Commissioner is **AFFIRMED** and this case **DISMISSED**, and it is

**ORDERED**, that the Clerk enter judgment for **DEFENDANT**.


Dated:   May 21, 2020

Andrew T. Baxter
U.S. Magistrate Judge